# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JONATHAN SKLADANOWSKI and
ARNMARIE EBREO SKLADANOWSKI,
individuals,

        Plaintiffs,

v.

SANTANDER CONSUMER USA INC.,
d/b/a CHRYSLER CAPITAL,
a foreign corporation; ORLANDO J.
AUTOMOTIVE MANAGEMENT, LLC, d/b/a
CENTRAL FLORIDA CHRYSLER DODGE JEEP
RAM, a Florida limited liability
company; and TRANSUNION LLC,
a foreign limited liability company,

        Defendants.

Case No.:

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COME NOW**, Plaintiffs, JONATHAN SKLADANOWSKI and ARNMARIE EBREO SKLADANOWSKI (hereinafter collectively "Plaintiffs"), by and through the undersigned counsel, and hereby sue Defendants SANTANDER CONSUMER USA INC. d/b/a CHRYSLER CAPITAL (hereinafter "Chrysler Capital"), ORLANDO J. AUTOMOTIVE MANAGEMENT, LLC d/b/a CENTRAL FLORIDA CHRYSLER DODGE JEEP RAM (hereinafter "Central Florida CDJR"), and TRANSUNION LLC (hereinafter "TransUnion"). In support thereof, Plaintiffs state:

1

## PRELIMINARY STATEMENT

1.    This is an action for damages under the Fair Credit Reporting Act and for breach of contract. After Plaintiffs traded in their leased vehicle and the dealership assumed ownership of the vehicle and the obligation to pay off the lease, Chrysler Capital reported the lease account as past due and delinquent on both Plaintiffs' credit reports. Chrysler Capital continued to report the account as delinquent after the account was paid in full, after the dealership admitted fault in writing, and after Plaintiffs repeatedly disputed the reporting.

2.    Plaintiffs sue Chrysler Capital under 15 U.S.C. § 1681s-2(b) for failing to reasonably investigate and correct its inaccurate reporting after receiving notice of Plaintiffs' disputes from the consumer reporting agencies. Plaintiffs sue TransUnion under 15 U.S.C. §§ 1681i(a)(1), (a)(4), and (a)(5) for failing to reasonably reinvestigate, to consider all relevant information, and to correct or delete the inaccurate information. And Plaintiffs sue Central Florida CDJR for breach of contract for failing to timely satisfy the lease payoff it assumed when it took the vehicle.

3.    Experian and Equifax corrected the reporting after Plaintiffs' first round of disputes. TransUnion did not. Through four rounds of certified-mail disputes, TransUnion refused to correct the same error the other two bureaus had already corrected, and at one point reported the

2

delinquency as more severe, changing it from thirty days to sixty days. Both Plaintiffs suffered credit harm as a result.

## JURISDICTION, VENUE & PARTIES

4.   This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, as Plaintiffs' federal claims arise under the FCRA, 15 U.S.C. § 1681 *et seq.* The Court has supplemental jurisdiction over Plaintiffs' state-law breach of contract claim under 28 U.S.C. § 1367, as that claim is so related to the federal claims that it forms part of the same case or controversy.

5.   This Court has personal jurisdiction over each Defendant, as each regularly transacts business in the State of Florida and within this District, and the acts and omissions giving rise to this action occurred within this District.

6.   Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and Plaintiffs reside in Orange County, Florida, which lies within the Orlando Division of the Middle District of Florida.

7.   Plaintiff Jonathan Skladanowski is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c), residing at 9421 Tyrella Pine Trail, Winter Garden, Florida 34787, in Orange County, Florida.

3

8. Plaintiff Arnmarie Ebreo Skladanowski is a natural person and a "consumer" as defined by 15 U.S.C. § 1681a(c), residing at 9421 Tyrella Pine Trail, Winter Garden, Florida 34787, in Orange County, Florida.

9. Defendant Santander Consumer USA Inc. d/b/a Chrysler Capital ("Chrysler Capital") is a foreign corporation that does business in Florida, with a mailing address of P.O. Box 961275, Fort Worth, Texas 76161. Chrysler Capital regularly furnishes information to consumer reporting agencies and is a "person" and "furnisher" as those terms are used in 15 U.S.C. § 1681s-2.

10. Defendant Orlando J. Automotive Management, LLC d/b/a Central Florida Chrysler Dodge Jeep Ram ("Central Florida CDJR") is a Florida limited liability company that does business in Florida, with its principal place of business at 8675 Commodity Circle, Orlando, Florida 32819.

11. Defendant TransUnion LLC ("TransUnion") is a foreign limited liability company organized under the laws of Delaware, with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## THE FAIR CREDIT REPORTING ACT

4

12. Congress enacted the FCRA to ensure that consumer reporting agencies "exercise their grave responsibilities" with fairness, impartiality, and a respect for the consumer's right to privacy, and to require that consumer credit information be reported accurately. 15 U.S.C. § 1681(a)–(b).

13. Under 15 U.S.C. § 1681e(b), whenever a consumer reporting agency prepares a consumer report, it must follow reasonable procedures to assure maximum possible accuracy of the information concerning the consumer about whom the report relates.

14. Under 15 U.S.C. § 1681i(a)(1), if a consumer disputes the completeness or accuracy of an item of information in the consumer's file and notifies the consumer reporting agency directly, the agency must, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, and must record the current status of the disputed information or delete the item from the file, before the end of the thirty (30)-day period beginning on the date the agency receives the dispute.

15. Under 15 U.S.C. § 1681i(a)(4), in conducting any reinvestigation, the consumer reporting agency must review and consider all relevant information submitted by the consumer.

16. Under 15 U.S.C. § 1681i(a)(5)(A), if an item of disputed information is found to be inaccurate or incomplete or cannot be verified after any reinvestigation, the consumer reporting agency must promptly delete that item of information from the consumer's file or modify it, as appropriate, based on the results of the reinvestigation.

17. Under 15 U.S.C. § 1681s-2(b), after a furnisher receives notice of a dispute from a consumer reporting agency pursuant to § 1681i(a)(2), the furnisher must: (A) conduct a reasonable investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency; (C) report the results of the investigation to the consumer reporting agency; (D) if the investigation finds the information to be incomplete or inaccurate, report those results to all other nationwide consumer reporting agencies to which the furnisher provided the information; and (E) modify, delete, or permanently block the reporting of information found to be inaccurate, incomplete, or unverifiable.

18. A furnisher or consumer reporting agency that willfully fails to comply with any requirement of the FCRA is liable under 15 U.S.C. § 1681n for the consumer's actual damages or statutory damages of not less than $100 and not more than $1,000, such punitive damages as the court may allow, and reasonable attorneys' fees and costs.

19.  A furnisher or consumer reporting agency that negligently fails to comply with any requirement of the FCRA is liable under 15 U.S.C. § 1681o for the consumer's actual damages and reasonable attorneys' fees and costs.

20.  Reported information is "inaccurate" within the meaning of the FCRA when it is "factually incorrect, objectively likely to mislead its intended user, or both," and information that is technically accurate may still be actionable where it is presented in such a way that it creates a materially misleading impression. *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251–52 (11th Cir. 2020); *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008). The Eleventh Circuit has further confirmed that to be actionable, the alleged inaccuracy must be "objectively and readily verifiable." *Holden v. Holiday Inn Club Vacations, Inc.*, 98 F.4th 1359, 1366 (11th Cir. 2024). The inaccuracy alleged here satisfies that standard: it is documented by a public government title reassignment (Exhibit A), a written admission by the dealership's own General Manager (Exhibit B), confirmed proof of full payoff, and the correction of identical reporting by two other consumer reporting agencies from the same documentation.

## **GENERAL ALLEGATIONS**

7

## THE LEASE, THE TRADE-IN, AND THE DEALERSHIP'S PAYOFF OBLIGATION

21. In or around April 2022, Plaintiffs leased a 2022 Jeep Grand Cherokee Laredo bearing Vehicle Identification Number 1C4RJGAG6N8581764 (the "Vehicle") under a motor vehicle lease agreement serviced by Chrysler Capital and identified by account number ending ••••9534 (the "Account"). The lease commenced on April 23, 2022, and Plaintiffs' monthly payments were due on the twenty-third day of each month.

22. Plaintiffs timely made every monthly payment due under the lease, including their final payment on March 23, 2025.

23. On April 9, 2025, Plaintiffs returned the Vehicle to Central Florida CDJR as a trade-in. That same day, Central Florida CDJR took ownership of the Vehicle and executed a Florida Motor Vehicle Title Reassignment reflecting a date of sale of April 9, 2025 and a value of $25,000.00 (Exhibit A). As part of the trade-in transaction, Central Florida CDJR assumed the obligation to pay off the remaining balance of the Account with Chrysler Capital.

24. On that same day, April 9, 2025, Plaintiffs leased a replacement vehicle, a 2025 Jeep Wrangler Unlimited, from Central Florida CDJR. The simultaneous lease of a new vehicle from the same dealership confirms that the trade-in of the 2022 Jeep Grand Cherokee

8

Laredo was completed and that Central Florida CDJR took possession and ownership of the traded-in Vehicle on April 9, 2025.

25.  As of April 9, 2025, Plaintiffs no longer owned or possessed the Vehicle, had no further payment obligations as lessees, and reasonably understood that the remaining payoff would be satisfied by Central Florida CDJR.

## THE DEALERSHIP'S LATE PAYOFF AND CHRYSLER CAPITAL'S INACCURATE REPORTING

26. Central Florida CDJR did not timely pay off the Account. It remitted a payment of $27,664.40 to Chrysler Capital on or about May 27, 2025, weeks after taking ownership of the Vehicle, and that payment fell $286.06 short of the full payoff amount.

27. The remaining $286.06 was thereafter paid and delivered to Chrysler Capital by overnight delivery, confirmed delivered and signed for on June 23, 2025. The Account was therefore paid in full no later than June 23, 2025.

28. On or about June 3, 2025, Chrysler Capital sent Plaintiff Jonathan Skladanowski a written letter regarding the Account (the "Chrysler Capital Letter"). In that letter, Chrysler Capital acknowledged receiving the dealership's $27,664.40 payment on May 27, 2025,

9

identified the precise $286.06 shortfall remaining on the payoff, and stated that it "respectfully decline[d] to waive the late fees that have been assessed on the account." The Chrysler Capital Letter establishes that Chrysler Capital had actual knowledge, no later than June 3, 2025, of the trade-in, the dealership's payment, the exact amount needed to close the Account, and Plaintiffs' objection to the reporting.

29. Despite the full payoff of the Account by June 23, 2025, Chrysler Capital continued to report the Account to TransUnion, Experian, and Equifax as past due and delinquent. On or about June 24, 2025, the day after the Account was paid in full, both Plaintiffs were notified of significant, double-digit drops in their credit scores caused by Chrysler Capital's reporting.

30. Stephen Matthews, the General Manager of Central Florida CDJR, prepared and sent a written letter to Chrysler Capital acknowledging that the dealership, not Plaintiffs, was at fault for the delayed payoff and any resulting account irregularity (the "At-Fault Letter") (Exhibit B). The At-Fault Letter was transmitted to Chrysler Capital by email to asu_helpchryslerlease@chryslercapital.com and by facsimile to (877) 216-5854, which was sent twice with transmission confirmations.

31. Chrysler Capital's reporting of the Account as past due and delinquent was and is factually inaccurate. Plaintiffs made every payment they owed, the Vehicle and the payoff obligation had been assumed by the dealership, and the Account was paid in full. Reporting Plaintiffs as delinquent on a paid account conveys the materially misleading impression that Plaintiffs failed to meet their financial obligations.

32. Plaintiff Jonathan Skladanowski's credit file maintained by TransUnion reported the Account with an erroneous sixty (60)-day delinquency. Plaintiff Arnmarie Ebreo Skladanowski's credit file maintained by TransUnion reported the Account with an erroneous thirty (30)-day delinquency. Neither delinquency ever occurred.

## PLAINTIFFS' DISPUTES AND THE DEFENDANTS' RESPONSES

33. Beginning in June 2025, Plaintiffs disputed the Account directly with Chrysler Capital on more than one occasion, including by certified mail. By letter dated June 25, 2025, Plaintiffs detailed the trade-in, the dealership's payment, the UPS delivery of the $286.06 balance, the resulting credit-score drops, and the dealership's At-Fault Letter, and demanded that Chrysler Capital correct its reporting. Chrysler Capital did not correct its reporting.

11

34. On or about August 18, 2025, Plaintiffs each sent written disputes by certified mail to TransUnion (P.O. Box 2000, Chester, Pennsylvania 19016), Experian (P.O. Box 4500, Allen, Texas 75013), and Equifax (P.O. Box 740256, Atlanta, Georgia 30374), disputing the accuracy of the Account and enclosing supporting documentation showing that the Vehicle had been traded in to and assumed by Central Florida CDJR as of April 9, 2025. Certified mail receipts bearing an August 18, 2025 postmark confirm all six mailings.

35. Each of the three credit bureaus received Plaintiffs' disputes and, pursuant to 15 U.S.C. § 1681i(a)(2), notified Chrysler Capital of the disputes.

36. On or about August 27, 2025, Equifax issued a response to Plaintiff Arnmarie Ebreo Skladanowski's dispute confirming that it had reinvestigated, contacted the furnisher, considered the documentation she submitted, and made changes to her credit report based on her dispute. Experian likewise corrected its reporting of the Account following the first round of disputes. Both Experian and Equifax thus corrected the inaccurate reporting.

37. TransUnion, by contrast, did not reinvestigate. On or about August 27, 2025, TransUnion sent each Plaintiff a letter refusing to process the dispute, asserting that it "didn't appear that you or a

properly authorized third party" had submitted it. TransUnion conducted no reinvestigation of the Account in response to the August 18, 2025 disputes and made no correction, leaving the inaccurate derogatory information in place on both Plaintiffs' credit files even though Equifax and Experian corrected the same information based on the same disputes.

38. On or about October 31, 2025, Plaintiffs each sent a second round of written disputes to TransUnion by certified mail, again disputing the Account and expressly informing TransUnion that Experian and Equifax had already corrected the same reporting. The return receipt for Arnmarie's October 31, 2025 dispute was confirmed delivered and signed on or about November 11, 2025.

39. On or about December 4, 2025, TransUnion issued its reinvestigation results. As to Plaintiff Arnmarie Ebreo Skladanowski, TransUnion designated the disputed item "VERIFIED AS ACCURATE AND UPDATED" and left in place an erroneous maximum delinquency of thirty (30) days reported in May 2025 and June 2025. As to Plaintiff Jonathan Skladanowski, TransUnion designated the disputed item "DISPUTED INFORMATION UPDATED" but, rather than correcting the error, reported an erroneous maximum delinquency of sixty (60) days in June 2025,

13

changing Jonathan's reporting from a thirty (30)-day delinquency to a sixty (60)-day delinquency and making it worse.

40. On or about January 20, 2026, Plaintiffs each sent a third round of written disputes to TransUnion by certified mail, again disputing the Account and its worsened reporting. Arnmarie's January 20, 2026 dispute stated that she had already provided TransUnion with all documentation in her possession and did not know what more she could send. Plaintiffs had exhausted the dispute process available to them.

41. Experian and Equifax corrected the Account based on the same documentation TransUnion received. The inaccuracy was therefore verifiable and could have been corrected through a reasonable reinvestigation. TransUnion's refusal to correct the same error across multiple rounds of disputes, and its reporting of a more severe delinquency for Jonathan, show that TransUnion failed to conduct a reasonable reinvestigation and failed to review and consider the relevant information Plaintiffs submitted.

42. Upon information and belief, TransUnion did not conduct a meaningful, independent reinvestigation of Plaintiffs' disputes, but instead merely forwarded the disputes to Chrysler Capital through automated means and parroted back the furnisher's response without independently evaluating the documentation Plaintiffs submitted. The

14

Eleventh Circuit has held, in a case arising from the Middle District of Florida, that a CRA's reinvestigation is unreasonable as a matter of law where it does nothing more than submit an automated inquiry to the furnisher and accept the response without independently reviewing documentation the consumer submitted. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021). That standard directly controls the TransUnion claims in this action.

## PLAINTIFFS' DAMAGES

43. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered actual damages, including damage to their credit reputations and creditworthiness; significant drops in their credit scores; loss of the ability to obtain credit and credit on favorable terms; being deterred from applying for credit out of a well-founded belief that the derogatory reporting would cause them to be denied or to receive unfavorable terms; the expenditure of substantial time and effort attempting to correct the reporting; and emotional distress, anxiety, frustration, embarrassment, and humiliation.

## COUNT I:
## VIOLATION OF 15 U.S.C. § 1681s-2(b)
### (Against Defendant Santander Consumer USA Inc. d/b/a Chrysler Capital)

Plaintiffs re-allege paragraphs one (1) through forty-three (43) as if fully restated herein and further state as follows:

15

44. Chrysler Capital is a furnisher of information subject to the duties imposed by 15 U.S.C. § 1681s-2(b).

45. Each of the three credit bureaus notified Chrysler Capital of Plaintiffs' disputes regarding the Account pursuant to 15 U.S.C. § 1681i(a)(2), thereby triggering Chrysler Capital's duties under § 1681s-2(b).

46. Chrysler Capital violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation of the disputed information, failing to review all relevant information provided by the credit bureaus, failing to correctly report the results of any investigation, and failing to modify, delete, or permanently block the inaccurate reporting of the Account. Chrysler Capital instead continued to report the Account as past due and delinquent. Under the Eleventh Circuit's framework for furnisher claims, a plaintiff must (1) identify the inaccurate information the furnisher reported, and (2) identify facts the furnisher could have uncovered that would have established the inaccuracy. *Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212, 1218 (11th Cir. 2023). Plaintiffs satisfy both prongs: the erroneous delinquency entries on their credit reports constitute the inaccurate reporting (prong one), and a reasonable investigation of Chrysler Capital's own June 3, 2025 letter, the Title Reassignment, the

16

confirmed payoff, and the GM At-Fault Letter would have established the inaccuracy (prong two).

47. Chrysler Capital's continued reporting was inaccurate. The Account had been paid in full no later than June 23, 2025; the Vehicle and the payoff obligation had been assumed by Central Florida CDJR on April 9, 2025; the dealership's General Manager had admitted fault in writing; and Chrysler Capital's own June 3, 2025 letter reflected its actual knowledge of the trade-in, the dealership's payment, and the precise outstanding balance.

48. Chrysler Capital's violations were willful within the meaning of 15 U.S.C. § 1681n. Chrysler Capital possessed actual, documented knowledge of the facts establishing the inaccuracy of its reporting, including its own June 3, 2025 letter, the dealership's At-Fault Letter, the confirmed payoff, and multiple rounds of dispute notices, yet continued to report the Account as delinquent in reckless disregard of its statutory duties. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). A furnisher's reliance on its own internal records to confirm disputed information, without engaging substantively with the consumer's documentary evidence, constitutes an unreasonable investigation as a matter of law and supports a finding of willfulness. *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1310 (11th Cir. 2019). The facts here

are more compelling than *Marchisio*: Chrysler Capital's own June 3, 2025 letter documented actual knowledge of the trade-in and the precise outstanding balance, yet Chrysler Capital continued to report delinquency after receiving full payoff.

49. In the alternative, Chrysler Capital's violations were negligent within the meaning of 15 U.S.C. § 1681o.

50. As a direct and proximate result of Chrysler Capital's violations, Plaintiffs suffered the damages described above and are entitled to recover actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs under 15 U.S.C. §§ 1681n and 1681o.

## COUNT II:
## VIOLATION OF 15 U.S.C. § 1681i(a)(1)
### (Against Defendant TransUnion LLC)

Plaintiffs re-allege paragraphs one (1) through forty-three (43) as if fully restated herein and further state as follows:

51. TransUnion received Plaintiffs' disputes of the Account and was thereby obligated under 15 U.S.C. § 1681i(a)(1) to conduct a reasonable reinvestigation, free of charge, within thirty (30) days, and to record the current status of the disputed information or delete it.

18

52. TransUnion violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation of Plaintiffs' disputes and by failing to delete or correct the inaccurate reporting within the statutory period.

53. TransUnion's violation is established by the results of its own reinvestigation. After Plaintiffs disputed the Account, TransUnion verified Arnmarie's erroneous thirty (30)-day delinquency as accurate and changed Jonathan's reporting from a thirty (30)-day to a sixty (60)-day delinquency, worsening rather than correcting it. That Experian and Equifax corrected the same Account based on the same documentation demonstrates that the error was readily verifiable and that TransUnion's reinvestigation was unreasonable. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021) (CRA's exclusive reliance on furnisher response, without independent review of consumer-submitted documentation, is unreasonable as a matter of law).

54. TransUnion's violations were willful within the meaning of 15 U.S.C. § 1681n or, in the alternative, negligent within the meaning of 15 U.S.C. § 1681o.

55. As a direct and proximate result of TransUnion's violations, Plaintiffs suffered the damages described above and are entitled to recover actual damages, statutory damages, punitive damages, and

19

reasonable attorneys' fees and costs under 15 U.S.C. §§ 1681n and 1681o.

**COUNT III:**
**VIOLATION OF 15 U.S.C. § 1681i(a)(4)**
**(Against Defendant TransUnion LLC)**

Plaintiffs re-allege paragraphs one (1) through forty-three (43) as if fully restated herein and further state as follows:

56. In conducting any reinvestigation of Plaintiffs' disputes, TransUnion was obligated under 15 U.S.C. § 1681i(a)(4) to review and consider all relevant information submitted by Plaintiffs.

57. Plaintiffs submitted, with their disputes, documentation establishing that the Vehicle had been traded in to and assumed by Central Florida CDJR on April 9, 2025, that the dealership had assumed the payoff obligation, that the Account had been paid in full, and that the dealership had admitted fault in writing.

58. TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider that information, as demonstrated by its continued and worsened reporting of the Account. That Experian and Equifax reviewed the same documentation and corrected the Account confirms both that the documentation was sufficient to establish the inaccuracy and that TransUnion failed to meaningfully consider it. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021).

20

59. TransUnion's violations were willful within the meaning of 15 U.S.C. § 1681n or, in the alternative, negligent within the meaning of 15 U.S.C. § 1681o.

60. As a direct and proximate result of TransUnion's violations, Plaintiffs suffered the damages described above and are entitled to recover actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs under 15 U.S.C. §§ 1681n and 1681o.

**COUNT IV:**
**VIOLATION OF 15 U.S.C. § 1681i(a)(5)**
**(Against Defendant TransUnion LLC)**

Plaintiffs re-allege paragraphs one (1) through forty-three (43) as if fully restated herein and further state as follows:

61. Upon any reinvestigation finding the disputed information to be inaccurate, incomplete, or unverifiable, TransUnion was obligated under 15 U.S.C. § 1681i(a)(5)(A) to promptly delete or modify the item of information, as appropriate.

62. The Account information was inaccurate and, at minimum, unverifiable as reported, given the documentation Plaintiffs submitted and the corrections made by Experian and Equifax.

63. TransUnion violated 15 U.S.C. § 1681i(a)(5) by failing to delete or correctly modify the inaccurate Account information following its

reinvestigation. Instead, TransUnion verified Arnmarie's erroneous thirty (30)-day delinquency and changed Jonathan's reporting to an erroneous sixty (60)-day delinquency, failing in both instances to bring its reporting into accuracy. *See Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 945 (11th Cir. 2021).

64. TransUnion's violations were willful within the meaning of 15 U.S.C. § 1681n or, in the alternative, negligent within the meaning of 15 U.S.C. § 1681o.

65. As a direct and proximate result of TransUnion's violations, Plaintiffs suffered the damages described above and are entitled to recover actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs under 15 U.S.C. §§ 1681n and 1681o.

**COUNT V:**
**BREACH OF CONTRACT**
**(Against Defendant Orlando J. Automotive Management, LLC**
**d/b/a Central Florida Chrysler Dodge Jeep Ram)**

Plaintiffs re-allege paragraphs one (1) through forty-three (43) as if fully restated herein and further state as follows:

66. On April 9, 2025, Plaintiffs and Central Florida CDJR entered into an agreement under which Plaintiffs traded in and surrendered the Vehicle to Central Florida CDJR, and Central Florida CDJR took ownership of the Vehicle and assumed the obligation to pay off the remaining

22

balance of the Account with Chrysler Capital. The Title Reassignment executed that day reflects Central Florida CDJR's acquisition of the Vehicle (Exhibit A).

67. Plaintiffs performed all of their obligations under the agreement, including surrendering the Vehicle to Central Florida CDJR.

68. Central Florida CDJR breached the agreement by failing to timely pay off the remaining balance of the Account. It paid the bulk of the balance weeks late and left a $286.06 shortfall unpaid until June 23, 2025.

69. Central Florida CDJR's own General Manager acknowledged in writing that the dealership was at fault for the delayed payoff (Exhibit B).

70. As a direct and proximate result of Central Florida CDJR's breach, Chrysler Capital reported the Account as past due and delinquent, causing Plaintiffs significant credit damage, including drops in their credit scores, damage to their credit reputations, loss of access to credit on favorable terms, and emotional distress, together with other consequential and incidental damages to be proven at trial.

71. Plaintiffs are entitled to recover their actual damages caused by Central Florida CDJR's breach of contract, together with any other relief available under applicable law.

23

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants and grant the following relief:

a. A declaration that Orlando J. Automotive Management, LLC d/b/a Central Florida Chrysler Dodge Jeep Ram breached its contract with Plaintiffs;

b. An award of actual damages against Central Florida CDJR for its breach of contract;

c. An award of actual damages against all Defendants;

d. An award of statutory damages against Chrysler Capital and TransUnion under 15 U.S.C. § 1681n;

e. An award of punitive damages against Chrysler Capital and TransUnion under 15 U.S.C. § 1681n;

f. An award of reasonable attorneys' fees and costs under 15 U.S.C. §§ 1681n and 1681o;

g. Pre- and post-judgment interest as allowed by law; and

h. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

24

## PLAINTIFF'S NOTICE OF LEAD COUNSEL DESIGNATION

Plaintiff,by and through the undersigned counsel, pursuant to Middle District of Florida Local Rule 2.02(a), hereby designates Max Story, Esq. as Lead Counsel for Plaintiff.

Respectfully submitted,

**STORY LAW GROUP**

*/s/ Max Story*
MAX STORY, ESQ.
Florida Bar No.: 527238
328 2nd Avenue North, Suite 100
Jacksonville Beach, FL 32250
Telephone: (904) 372-4109
max@storylawgroup.com
*Attorney for Plaintiffs*

25